IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOSHUA HARRELL,<br><br>    Plaintiff,<br><br>    v.<br><br>UNIVERSITY OF MARYLAND SCHOOL OF PHARMACY,<br><br>    Defendant. | Civ. No. MJM-24-104 |

## MEMORANDUM

Plaintiff Joshua Harrell ("Plaintiff"), *pro se*, brought this action against the University of Maryland School of Pharmacy ("UMSOP"), alleging violations of their First Amendment rights. ECF No. 1 ("Compl."). Plaintiff filed their Complaint for Injunctive and Declaratory Relief in this Court on January 11, 2024, under the Court's original jurisdiction pursuant to 28 U.S.C. § 1331. *Id.* Currently pending is Plaintiff's Motion to Alter and Amend Judgment (the "Motion"). ECF No. 9 ("Mot."). UMSOP has not been served a summons nor made an appearance. The Court conducted an ex parte hearing on the Motion on May 8, 2024. For the reasons stated below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff was a student at the UMSOP. They allege that the UMSOP wrongfully issued a grievance and pursued student disciplinary action against them in violation of their First Amendment rights. In the grievance, the Associate Dean of Academic Affairs alleged that Plaintiff "engag[ed] in disruptive behavior in multiple classes as well as other events hosted at the UMSOP" in violation of Section 3.1 of the Student Honor Code. ECF No. 1-2 at 1; *see* ECF No. 1-13 (under

§ 3.1, "[l]ewd, obscene, or disruptive behavior on university premises or at university supervised activities" are violations of the Student Honor Code). The Associate Dean further alleged that Plaintiff's behavior "failed to meet the technical standards of the program, which require collaborative skills, effective communication, appropriate responses to communications, respect for differences in culture, values, and ethics, and interpersonal skills sufficient to communicate effectively." ECF No. 1-2 at 2; *see* ECF No. 1-12.

Plaintiff has filed two lawsuits based on the foregoing. On October 30, 2023, Plaintiff filed a Petition for Administrative Mandamus against the UMSOP in the Circuit Court for Baltimore City, Maryland, No. 24-C-23004658 ("*Harrell I*"). Compl. ¶ 12. In *Harrell I*, Plaintiff brought claims under Article 40 of the Maryland Declaration of Rights, which "provides that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects." Plaintiff's motion for a temporary restraining order in *Harrell I* was denied on December 15, 2023, and they subsequently noticed an appeal to the Appellate Court of Maryland.

On January 11, 2024, Plaintiff filed a Complaint against UMSOP in this Court and a Motion for Temporary Restraining Order and Preliminary Injunction, claiming that the allegedly disruptive behavior described in the grievance is protected by the First Amendment to the U.S. Constitution, which guarantees freedom of speech. ECF Nos. 1 & 3. In the instant case, Plaintiff requested (1) a permanent injunction to prevent the UMSOP from bringing any student disciplinary action against them, (2) declaratory relief stating that the UMSOP violated Plaintiff's First Amendment rights, and (3) an award of costs.[1] Compl. ¶¶ 136–40.

On January 24, 2024, the Honorable George L. Russell III of this Court issued a Letter Order denying without prejudice Plaintiff's Motion for Temporary Restraining Order and

---

[1] According to the Complaint, Harrell sought the same relief in the instant case as in *Harrell I*, Compl. ¶ 12, but the pending Motion states that declaratory relief was not sought in *Harrell I*, Mot. at 5.

Preliminary Injunction, dismissing Plaintiff's Complaint, and directing the Clerk to close the case (the "Letter Order"). *See* ECF No. 8. Judge Russell concluded that (1) Plaintiff was not entitled to a temporary restraining order because they failed to demonstrate a likelihood of irreparable harm in the absence of preliminary relief; (2) *Harrell I* precluded this Court from considering Plaintiff's claims in the instant case; and (3) the *Chase Brexton* test weighed in favor of this Court's abstention under *Colorado River*. *Id.* at 2–4.

On February 2, 2024, Plaintiff filed the Motion to Alter and Amend Judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, challenging both the Court's denial of their Motion for Temporary Restraining Order and Preliminary Injunction and the dismissal of the Complaint. ECF No. 9.

## LEGAL STANDARD

A party may file a motion to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure. A district court may grant a Rule 59(e) motion "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Rule 59(e) motions are "an extraordinary remedy which should be used sparingly." *Id.* (citation omitted). Such motions "may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.*

To justify granting a Rule 59(e) motion based on a clear error of law, it is insufficient for a plaintiff to show that the court's judgment was "just maybe or probably wrong . . . ." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2019) (citation omitted). "[M]ere disagreement" with the

court's analysis will not suffice. *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993). The plaintiff must identify a clear error of law that "strike[s] [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish. . . . It must be dead wrong." *Franchot*, 572 F.3d at 194 (cleaned up).

Filings by *pro se* litigants are held "to less stringent standards than formal pleadings drafted by lawyers." *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe *pro se* pleadings liberally in the interest of justice. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

## DISCUSSION

### I. Dismissal of the Complaint

In the Motion, Plaintiff argues that, in the Letter Order, the Court erred in its decision to abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and to dismiss the Complaint on that basis. The Court agrees that the record does not currently justify *Colorado River* abstention and will therefore reopen the case.

Under *Colorado River*, "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction . . . .'" *Colo. River*, 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). However, courts have long recognized a "general principle . . . to avoid duplicative litigation." *Id.* When there are parallel proceedings in state and federal court, a federal court may abstain under certain "exceptional circumstances." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983) (citing *Colo. River*, 424 U.S. 800). This form of abstention is "unrelated to considerations of proper constitutional adjudication and regard for federal-state relations[,]" but rather "rest[s] on considerations of [w]ise judicial

4

administration" and regard for "conservation of judicial resources and comprehensive disposition of litigation." *Colo. River*, 424 U.S. at 817 (internal quotation marks and citation omitted).

Whether the state and federal proceedings are "parallel" is a "threshold question" for abstention under the *Colorado River* doctrine. *Barcoding, Inc. v. Genet*, Civ. No. 11-2026, 2011 WL 4632575, at *3 (D. Md. Sept. 30, 2011). Proceedings are parallel if "substantially the same parties litigate substantially the same issues in different forums." *vonRosenberg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017) (citation omitted). Overlapping legal theories and factual allegations are not enough. *See Barcoding, Inc.*, 2011 WL 4632575, at *3. If, however, the proceedings are between the same parties and present the same issues, they are likely to be considered parallel. *See Schneider Elec. Bldgs. Critical Sys., Inc. v. W. Sur. Co.*, Civ. No. 14-1890, 2015 WL 1656449, at *4 (D. Md. Apr. 14, 2015) (holding that the state and federal proceedings were parallel because the parties were "identical," and the issues were "substantially, if not precisely, identical").

Once federal and state proceedings are deemed parallel, the court considers six factors to determine whether exceptional circumstances justify abstention:

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463–64 (4th Cir. 2005) (citing *Colo. River*, 424 U.S. at 818–19, and *Moses H. Cone*, 460 U.S. at 15–16). "[A] federal court may abstain under *Colorado River* only if it 'concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *vonRosenberg*, 849 F.3d at 168 (quoting *Moses H. Cone*, 460 U.S. at 28).

5

In the Motion, Plaintiff takes issue with two issues in the Letter Order: first, that *Harrell I* and the instant suit are parallel; and second, that the balancing of the *Colorado River* factors warrants abstention. The Court finds no error in the determination that *Harrell I* and the instant case are parallel proceedings. That Plaintiff seeks declaratory relief in one suit and not the other, without more, does not render them non-parallel. In their Motion, Plaintiff does not cite any case where state and federal proceedings were found non-parallel under *Colorado River* based solely on such a distinction. *Cf. Blank River Servs., Inc. v. Towline River Serv., Inc.*, 395 F. Supp. 3d 589, 597–98 (W.D. Pa. 2019) ("[T]he Court is unaware of *any* precedential authority from a federal appellate court holding that actions are not parallel merely because declaratory relief is sought in one action and money damages are sought in another. Rather, other courts have explicitly held that the operative consideration for whether two actions are parallel is whether the state litigation will dispose of all of the issues in the federal case.") (citing cases).

However, the Court does find error as to the balancing of the *Colorado River* factors in the Letter Order. As the Supreme Court has recognized:

> [T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, **with the balance heavily weighted in favor of the exercise of jurisdiction**.

*Moses H. Cone*, 460 U.S. at 16 (emphasis added). Accordingly, the Fourth Circuit has stated that the court's task in deciding whether to abstain under *Colorado River*

> is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' . . . to justify the surrender of jurisdiction.

*Gannett Co. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 748 n.10 (4th Cir. 2002) (quoting *Moses H. Cone*, 460 U.S. at 25–26).

Here, the Court does not find "exceptional circumstances . . . to justify the surrender of jurisdiction." *Moses H. Cone*, 460 U.S. at 25–26 (internal quotation marks omitted). In *Gannett*, the Court of Appeals held that the fifth and sixth *Colorado River* factors

> can be used only in 'rare circumstances' to justify *Colorado River* abstention. . . . Instead, these factors typically are designed to justify retention of jurisdiction where an important federal right is implicated and state proceedings may be inadequate to protect the federal right . . . or where retention of jurisdiction would create 'needless friction' with important state policies.

286 F.3d at 746 (citations omitted). In the Letter Order, the Court erred in finding that the sixth factor—the adequacy of state proceedings—favored abstention without any finding of "rare circumstances." Even assuming that, in *Harrell I*, the state court is capable of adjudicating Plaintiff's claims and protecting the parties' rights, there is no indication that this Court's retention of jurisdiction over the instant case "would create 'needless friction' with important state policies" or that any other "rare" circumstance relating to the adequacy of the state case justifies abstention in this context. *Id.* Therefore, it was error for the sixth factor to be weighed in favor of dismissal.

The *Gannett* court also found that the district court erred in finding that a "neutral" *Colorado River* factor "did not weigh either for or against abstention." *Gannett*, 286 F.3d at 748 n.10. Because abstention in this context requires "exceptional circumstances," a neutral *Colorado River* factor ultimately "counsels against abstention[,]" even if it "does not weigh heavily in favor of exercising federal jurisdiction . . . ." *Id.* Similarly, here, the Letter Order erred in giving no weight to the "neutral" second *Colorado River* factor—whether the federal forum is inconvenient. *See* ECF No. 8 at 4. Because the federal forum is not inconvenient, this factor counsels against abstention.

For the foregoing reasons, Plaintiff's Motion will be granted as to the dismissal of the Complaint, and the Court will reopen the instant case and reinstate the Complaint.

7

## II. Denial of the Motion for Temporary Restraining Order and Preliminary Injunction

In their Motion for Temporary Restraining Order and Preliminary Injunction, Plaintiff requested a temporary restraining order ("TRO") and preliminary injunction directing UMSOP to: (1) stay and dismiss its disciplinary action against Plaintiff; (2) "abide by the First Amendment"; and (3) amend internal policies. ECF No. 3. The Court denied this request in the Letter Order. ECF No. 8 at 2–3. Plaintiff cites no intervening change in controlling law and presents no evidence to warrant reconsideration of this decision, and the Court finds no clear error of law or manifest injustice in denying preliminary injunctive relief.

As the Supreme Court has noted, a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "To obtain a preliminary injunction under the *Winter* test, a movant must make a 'clear showing' of [the] four requirements." *Low Tide Brewing, LLC v. Tideland Mgmt. LLC*, No. 2:21-CV-0775-DCN, 2021 WL 1381123, at *2 (D.S.C. Apr. 12, 2021) (alteration in original) (citation omitted).

Here, Plaintiff cannot demonstrate a likelihood of success on the merits of their claims or a likelihood they will suffer irreparable harm in the absence of preliminary relief. At the hearing on this matter, Plaintiff stated that they are no longer attending and not currently enrolled as a student at UMSOP. Plaintiff also stated they received communication from UMSOP on January 18, 2024, informing Plaintiff the disciplinary proceeding against them has been "halted." There appears to be no need for the preliminary relief Plaintiff requests to avoid any harm to them.

More importantly, Plaintiff has failed to show they are likely to succeed on the merits of their constitutional claims against UMSOP. *See Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) ("Without his alleged constitutional injury, [plaintiff] has failed to show that he will suffer irreparable harm.").

The Free Speech Clause states that the government "shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. Amend. I. However, "the freedom of speech . . . does not confer an absolute right to speak . . . ." *Gitlow v. New York*, 268 U.S. 652, 666 (1925). The First Amendment "protects speech along a spectrum," meaning that speech "receive[s] different levels of judicial scrutiny depending on the type of regulation and the justifications and purposes underlying it." *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (citing *Stuart v. Camnitz*, 774 F.3d 238, 244 (4th Cir. 2014)).

Assuming that the speech at issue here is protected by the First Amendment, the Court "must identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). The campus of a public university is a "limited public forum." *ACLU v. Mote*, 423 F.3d 438, 444 (4th Cir. 2005). Indeed, the areas in which Plaintiff alleges their speech was protected—namely, UMSOP classrooms[2]—were "opened only to a limited class of speakers [and] for limited topics." *Warren v. Fairfax Cnty.*, 196 F.3d 186, 193 (4th Cir. 1999). Specifically, they were open to students, faculty, and certain guests to speak on certain

---

[2] The third and fourth counts of the Complaint pertain to email communications with UMSOP faculty. Compl. ¶¶ 39–54, 99–106. The email systems utilized in this case are likely limited public fora, as well. *See Speech First v. Sands*, No. 7:21-CV-00203, 2021 WL 4315459, at *20 n.7 (W.D. Va. Sept. 22, 2021) (despite that "cyberspace is the most important 'place' for the exchange of views today," a university's network and email systems are not inherently public fora) (internal quotation marks omitted) (citing cases).

topics. Thus, UMSOP's policies related to these areas are required to be "viewpoint neutral and reasonable in light of the objective purposes served by the forum." *Id.* at 194.

The "touchstone for evaluating" such policies "is whether they are reasonable in light of the purpose which the forum at issue serves." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 49 (1983). In assessing reasonableness, courts may consider whether "substantial alternative channels . . . remain open" despite the policy. *Id.* at 54. Courts may also consider whether "the nature of the property is inconsistent with expressive activity." *Cornelius*, 473 U.S. at 803. Finally, courts should consider the "expertise and experience of school administrators" in creating "sound educational policy . . . ." *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 686 (2010).

In this case, Plaintiff is unlikely to succeed on the merits of their constitutional claims. Plaintiff's at-issue speech occurred in limited public fora designated for the education of UMSOP students on specific subjects pertinent to their education in pursuit of their degrees. Plaintiff does not allege that UMSOP's policies discriminate against any particular viewpoint. Indeed, the grievance at issue in this case states that Plaintiff's speech and conduct was

> unprofessional, inappropriate, distracting, argumentative, irrelevant, lacking in consideration for others . . . [and] caused confusion and disruption and substantially interfered with the ability of other students, faculty and visitors to effectively engage in teaching, learning, and advising, which are all activities that are essential to the [UMSOP's] academic program.

ECF No. 1-2 at 4. UMSOP has a substantial interest in enacting policies that ensure its students can learn in an environment with limited distractions. To the extent the at-issue policy curbs protected speech, Plaintiff has failed to show any likelihood that it did so in a way that was not "viewpoint neutral" or "reasonable in light of the objective purposes" of UMSOP. *Warren*, 196 F.3d at 194. Plaintiff is therefore unlikely to succeed on the merits of their constitutional claims.

Because Plaintiff is unlikely to succeed on the merits, Plaintiff fails to meet their burden that they are entitled to the "extraordinary remedy" of preliminary injunctive relief. Accordingly, the Court finds no error or injustice in its denial of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

## CONCLUSION

For the reasons stated herein, Plaintiff Joshua Harrell's Motion to Alter and Amend Judgment (ECF No. 9) will be GRANTED IN PART and DENIED IN PART. This civil action shall be reopened; however, no temporary restraining order or preliminary injunction shall issue.

A separate Order will issue.

DATED: 5/13/24                             _____/S/_____
                                           Matthew J. Maddox
                                           United States District Judge