**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **JOSHUA HARRELL,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-24-104** |
| **v.** | * | |
| | * | |
| **ANDREW COOP,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Self-represented plaintiff Joshua Harrell ("Plaintiff") initiated this civil action against the University of Maryland School of Pharmacy ("UMSOP"),[1] Andrew Coop, Sandeep Devabhakthuni, Steven Fletcher, Patricia Ross, James Trovato,[2] and Does 1–100 (collectively, "Defendants") pursuant to 42 U.S.C. § 1983, alleging violations of their rights under the First Amendment. ECF No. 32 (Second Amended Complaint or "SAC"). Plaintiff seeks injunctive and declaratory relief, as well as compensatory, punitive, and other damages. *Id.* ¶¶ 4, 138–47. This matter is before the Court on Defendants' Motion to Dismiss, ECF No. 35, and Plaintiff's Motion for Sanctions, ECF No. 47. No hearing is necessary to resolve these motions. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the Court shall grant Defendants' motion and deny Plaintiff's motion.

---

[1] Although UMSOP was voluntarily dismissed from this case on June 9, 2025, it moved to dismiss Plaintiff's Second Amended Complaint prior to its dismissal and termination. *See* ECF No. 35 at 1.

[2] Hereinafter, Coop, Devabhakthuni, Fletcher, Ross, and Trovato, will be referred to as "Individual Defendants" when addressed collectively.

1

## I.   PROCEDURAL BACKGROUND

On January 11, 2024, Plaintiff filed a Complaint against Defendants. ECF No. 1. Plaintiff amended their pleadings twice, filing their Second Amended Complaint ("SAC")—the operative complaint in this matter—on April 9, 2025. After the Court entered an Order granting Defendants an extension of time to respond to the SAC, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 35. Plaintiff then filed a notice of voluntary dismissal, dismissing UMSOP from this action, which this Court adopted. ECF Nos. 37 & 38. Plaintiff also filed a Motion to Enforce Consent Order, ECF No. 39, and Motion to Extend Time for Response to Motion to Dismiss, ECF No. 40. Defendants opposed the former motion, ECF No. 41, and Plaintiff replied in support of it, ECF No. 43. On July 21, 2025, the Court entered an Order denying Plaintiff's Motion to Enforce Consent Order, granting their Motion to Extend Time for Response to Motion to Dismiss, and setting August 4, 2025, as Plaintiff's deadline to file a response to Defendants' Motion to Dismiss. ECF No. 46. Plaintiff did not file any substantive response to the Motion to Dismiss, but they filed a Motion for Sanctions, ECF No. 47, to which Defendants did not respond.[3]

## II.   FACTUAL BACKGROUND

In August 2023, Plaintiff began their studies at UMSOP as a first-year doctoral student. SAC ¶ 20. This matter is borne out of a grievance issued against Plaintiff during their first semester. *See* ECF No. 1-2 (Pl. Ex. 0). The grievance details several instances in which UMSOP found Plaintiff's behavior to violate its Student Honor Code and to fall short of meeting the Pharmacy

---

[3] Local Rule 105.8 provides that, generally, a party need not respond to a motion for sanctions unless ordered by the Court.

program's technical standards. *Id.*; *see also* ECF No. 1-12 (Pl. Ex. 10) (technical standards); ECF No. 1-13 (Pl. Ex. 11) (student honor code).

The first incident occurred on August 22, 2023, during the orientation for one of Plaintiff's fall semester classes, PHAR 505 Abilities Lab 1 ("PHAR 505 ABL 1"). ECF No. 1-9 (Pl. Ex. 7). At the orientation, Plaintiff asked Dr. Jill Morgan, a lecturer in the course and then-candidate for Dean of the School of Pharmacy, "if [she] would continue teaching calculations in ABL 1 after she is promoted to Dean." *Id.* Three days after the event, Dr. Patricia Ross, Clinical Associate Professor and one of the course managers for PHAR 505 ABL 1, emailed Dr. Sandeep Devabhakthuni, Associate Professor and Associate Dean of Student Affairs, writing "[i]t was not the right time or place to ask this type of question." *Id.* Ross noted that she asked Plaintiff if they had any "additional questions" at the end of class, to which Plaintiff responded that they did not at that time but "would let [her] know since [they] plan[ned] on being in the building 24 hours a day, 7 days per week for the next 4 years." *Id.*

On September 11, 2023, during a lecture in a different class, Plaintiff "showed a lack of situational/social awareness" by "blowing their nose" in a manner that "caused a class disturbance." ECF No. 1-11 (Pl. Ex. 9). According to the professor teaching the class, "[s]everal students were disturbed by the noise and possible spreading of germs." *Id.* After being asked by the professor if they "needed some time outside the class," Plaintiff responded "no" and "discontinued [their] disruptive behavior." *Id.*

The next incident arose out of a "Noncompliance Notification" Plaintiff received on September 14, 2023, in their PHAR 505 ABL 1 course for "not completing the community pre-lab Qualtrics assignment." ECF No. 1-6 (Pl. Ex. 4) at 3. Hours after receiving this notification, Plaintiff emailed Ross and Dr. James Trovato—Professor, Vice Chair for Academic Affairs, and

the other course manager for PHAR 505 ABL 1—to inform them that there must have been "some misunderstanding," as Plaintiff "timely completed all the activities that were assigned before lab." *Id.* at 2. Plaintiff also expressed dissatisfaction with the way they were notified about the noncompliance and asked for a meeting "to ensure that there w[ould] not be any . . . lack of professionalism" following the noncompliance "allegation." *Id.* The following day, Ross and Trovato responded to Plaintiff, expressing interest in finding a time to meet "to discuss the noncompliance and address [Plaintiff's] concerns." *Id.* Plaintiff, Ross, and Trovato met on September 26, 2023. ECF No. 1-5 (Pl. Ex. 3). According to the professors, Plaintiff "spoke . . . in a condescending manner" towards them when discussing the course syllabus and policies. *Id.* In a letter to Dr. Andrew Coop, Professor and Associate Dean for Academic Affairs, Ross and Trovato recounted the meeting and expressed that Plaintiff "displayed a complete lack of respect" and "seem[ed] both self-unaware and socially unaware." *Id.*; *see also* ECF No. 1-7 (Pl. Ex. 5) (email chain regarding the course managers' letter).

Another incident occurred on September 22, 2023, four days before Plaintiff met with the PHAR 505 ABL 1 course managers, and was reported by an unnamed doctoral student to Coop. ECF No. 1-10 (Pl. Ex. 8). According to the student, during a question-and-answer session with Dr. Berhanu Kibret, a "potential pharmacology professor" at UMSOP, Plaintiff "ask[ed] oddly specific science questions," went "on mini-lectures regarding the [U]niversity and the social climate of the city as a whole," and "made a remark as a means to ensure Dr. Kibret that the [U]niversity's invitation [to him] for a[] [professorship] interview was done out of merit and not based upon his personal backgrounding and upbringing, . . . even though Dr. Kibret did[] [not] seem to have any speculation for such an issue to begin with." *Id.*

On September 27, 2023, Plaintiff attended a deaf awareness event at UMSOP. *See* ECF No. 1-3 (Pl. Ex. 1); ECF No. 1-4 (Pl. Ex. 2). "The main focus of [the] event was to learn about [the guest speaker's] hardships as a person within the deaf community and how [audience members] c[ould] advocate and educate others." ECF No. 1-4 at 2. During the question-and-answer portion of the event, Plaintiff "asked a microbiology question that had nothing to do with the topic on hand." *Id.*; *see also* ECF No. 1-3 at 2. Others in attendance perceived Plaintiff's question "as targeted" and intended to "question [the guest speaker's] intelligence." ECF No. 1-4 at 2. Plaintiff's question also "confused the [i]nterpreters and guest speaker to the point that [the guest speaker] had to ask what the purpose of [Plaintiff's] question was." *Id.*; *see also* ECF No. 1-3 at 2. According to a student attendee, Plaintiff also tried to use sign language to communicate with the guest speaker before the event began, but this also confused the guest speaker and interpreters because Plaintiff was using incorrect hand gestures. ECF No. 1-4 at 2.

Lastly, on October 2, 2023, in one of their classes, Plaintiff brought up several times information that was beyond the scope of the class, "us[ed] ChatGPT to look things up[,]" asked questions from Wikipedia, and conducted "absurd calculations and call[ed] out professors for rounding" numeric results when doing so was irrelevant. ECF No. 1-8 (Pl. Ex. 6).

On October 12, 2023, Devabhakthuni submitted a grievance against Plaintiff to Coop regarding the above incidents, stating that Plaintiff violated section 3.1 of the student honor code, which prohibited "[l]ewd, obscene, or disruptive behavior on university premises or at university-supervised activities." ECF No. 1-2. Plaintiff alleges upon information and belief that Coop was, at all relevant times, a member of the three-person "Preliminary Evaluation Panel" tasked with reviewing grievances to "determine by majority vote if the matter should be forwarded to the full [Discipline and Grievance] Committee for a formal [disciplinary] hearing or be subject to [an]

informal resolution process . . . ." SAC ¶¶ 3, 12, 74. Plaintiff further alleges that Coop voted to forward the matter "to the full Committee for a full hearing." *Id.* ¶ 75. Plaintiff alleges, also upon information and belief, that Dr. Steven Fletcher "is and was at all relevant times a professor at [UMSOP]" and "sits on the Preliminary Evaluation Panel," *id.* ¶ 14, and that he, too, voted to forward the matter "to the full Committee for a full hearing," *id.* ¶ 76. Coop and Fletcher's votes were sufficient under the University's student honor code to initiate a formal disciplinary hearing. *Id.* ¶ 77.

On October 16, 2023, Plaintiff received a grievance notification from Coop. *Id.* ¶ 78. Three days later, Coop clarified via email that the grievance against Plaintiff was only for "allegations of disruptive activities." *Id.* ¶ 79. On October 25, 2023, Plaintiff emailed Coop, Devabhakthuni, Fletcher, Ross, and Trovato, "requesting withdrawal and dismissal of all the portions of the action that were preempted by the state and federal constitutions." *Id.* ¶ 81. Coop replied the same day, acknowledging receipt of Plaintiff's email and explaining that "the Honor Code does not have a provision for ceasing the process once initiated" and that "[t]he process w[ould] continue as per the Honor Code." *Id.* ¶ 82.

Plaintiff responded to Coop's email later that evening, asking the professors to "consider the multiple reasonable proposals Plaintiff had previously provided to legally effect a dismissal consistently with both the Student Honor Code and the state and federal constitutions." *Id.* ¶ 83. Plaintiff also stated that "inaction would leave [them] with no choice but to pursue legal remedies." *Id.* On October 26, 2023, Coop replied again, stating that "the hearing process w[ould] continue as per the School Honor Code" and that he was there "to answer questions concerning [the University's] approach and policy, not to answer questions about changing or modifying [the University's] approach and policy." *Id.* ¶ 84. Coop also stated that any concerns Plaintiff had could

be brought up on appeal following the Committee's recommendations. *Id.* Defendants scheduled a hearing for January 24, 2024, to address the grievance against Plaintiff. *Id.* ¶ 3. At that hearing, the Discipline and Grievance Committee was "to decide whether Plaintiff should be dismissed from [UMSOP] based on the [g]rievance." *Id.*

On October 30, 2023, Plaintiff filed suit against UMSOP in the Circuit Court of Maryland for Baltimore City, alleging violations of Articles 40 and 43 of the Maryland Declaration of Rights. *Id.* ¶ 18; *Harrell v. Univ. Md., Sch. of Pharmacy*, Case No. 24-C-23-004658 (Cir. Ct. Balt. City, Md. 2023); *see also* MD. JUDICIARY CASE SEARCH, https://casesearch.mdcourts.gov/ [https://perma.cc/9LN3-7KNG] (last visited March 16, 2026). The Circuit Court denied Plaintiff's request for injunctive relief, and, on January 24, 2024, Plaintiff initiated an appeal. SAC ¶ 18; *Harrell v. Univ. Md., Sch. of Pharmacy*, Case No. ACM-REG-2241-2023 (Md. App. Ct. 2024); *see also* MD. JUDICIARY CASE SEARCH, https://casesearch.mdcourts.gov/ [https://perma.cc/QG68-6T3S] (last visited March 16, 2026) (hereinafter "MD. JUDICIARY CASE SEARCH 2"). On October 24, 2024, the appeal was dismissed pursuant to Maryland Rule 8-602(c)(6), which provides that "[t]he court may dismiss an appeal if . . . the style, contents, size, format, legibility, or method of reproduction of a brief, appendix, or record extract does not comply with Rules 8-112, 8-501, 8-503, or 8-504." *See* MD. JUDICIARY CASE SEARCH 2.

According to Plaintiff, the University's disciplinary proceeding against them was halted on January 18, 2024, but their disciplinary case has not been closed, "and Defendants continue to maintain this ambiguity as leverage against Plaintiff's expression of protected speech." SAC ¶ 3.

### III.    DEFENDANTS' MOTION TO DISMISS

#### A.  Standard of Review

Defendants move to dismiss Plaintiff's Second Amended Complaint for failure to state a claim, citing Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under this rule, a party may seek dismissal for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because "motion[s] to dismiss test[] the sufficiency of a complaint," courts assessing such motions are "generally limited to a review of the allegations of the complaint itself." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013)). But a court may also "consider documents that are explicitly incorporated into the complaint by reference," documents "attached to the complaint as exhibits," and documents attached to a motion to dismiss so long as they are "integral to the complaint and authentic." *Id.* at 166 (citations omitted). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached, the exhibit prevails." *Id.* (citation modified). Courts may also "take judicial notice of matters of public record and other information that . . . constitute adjudicative facts." *Goldfarb v. Mayor of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015) (citation modified).

Courts must construe *pro se* pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021); *see also Folkes v. Nelsen*, 34 F.4th 258, 272

8

(4th Cir. 2022). "[L]iberal construction does not require [the court] to attempt to 'discern the unexpressed intent of the plaintiff,' but only to determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a civil complaint by a self-represented plaintiff "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (citation modified) (quoting *King*, 825 F.3d at 214).

### B. Eleventh Amendment Immunity

Defendants put forth several arguments as to why the Court should dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6). As Plaintiff has failed to respond to Defendants' motion, the Court may dismiss this suit "on the uncontroverted bases asserted therein." *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004). Nevertheless, the Court addresses the threshold issue raised by Defendants—whether dismissal is warranted based upon Eleventh Amendment immunity. *See Betts v. Virginia*, No. 3:06CV753, 2007 WL 515406, at *2 (E.D. Va. Feb. 2, 2007) (resolving Eleventh Amendment immunity questions before addressing the rest of defendant's Rule 12(b)(6) motion).

Defendants argue in their motion that Plaintiff's claims against them, which arise under 42 U.S.C. § 1983, are barred by Eleventh Amendment immunity. *See* ECF No. 35-1 at 6–10. While it is not entirely clear "whether motions to dismiss based on Eleventh Amendment immunity are properly considered under Rule 12(b)(1) or Rule 12(b)(6)[,]" *Sikes v. Ward*, Civ. No. TDC-16-4108, 2017 WL 6055686, at *2 (D. Md. Dec. 6, 2017) (citing cases), judges of this Court have elected to evaluate Eleventh Amendment immunity under a Rule 12(b)(1) framework. *See Okusami v. Md. Dep't of Health & Mental Hygiene*, Civ. No. ELH-18-1701, 2019 WL 1003607,

at *6–7 (D. Md. Feb. 28, 2019); *Mua v. Maryland*, Civ. No. ELH-16-01435, 2017 WL 633392, at *8 (D. Md. Feb. 15, 2017), *aff'd*, 700 F. App'x 309 (4th Cir. 2017); *Tall v. Md. Dep't of Health & Mental Hygiene*, Civ. No. ELH-15-3811, 2016 WL 7491621, at *4 (D. Md. Dec. 29, 2016), *aff'd sub nom. Tall v. Md. Developmental Disabilities Admin.*, 690 F. App'x 841 (4th Cir. 2017); *Strong v. Swaim-Stanley*, Civ. No. WMN-12-CV-1924, 2012 WL 4058054, at *2 (D. Md. Sept. 13, 2012); *Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 547 (D. Md. 2008). Because Defendants argue that Eleventh Amendment immunity applies here and deprives the Court of subject matter jurisdiction over Plaintiff's § 1983 claims, ECF No. 35-1 at 9–10, it is appropriate to "treat the Eleventh Amendment aspect of [Defendants'] motion as seeking dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)," *Dove for Est. of Dove v. Stevens*, No. 5:05-CV-33-BO(1), 2006 WL 8438680, at *2 (E.D.N.C. Oct. 23, 2006).[4]

"[Federal Rule of Civil Procedure] 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction." *Horlick v. Cap. Women's Care, LLC*, 896 F. Supp. 2d 378, 387 (D. Md. 2011) (citing *Khoury v. Meserve*, 268 F.Supp.2d 600, 606 (D. Md. 2003), *aff'd*, 85 Fed.Appx. 960 (4th Cir. 2004)). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

---

[4] The Court is also persuaded by Judge Titus's reasoning in *Beckham* to apply a Rule 12(b)(1), not 12(b)(6), framework:

> [T]he Eleventh Amendment limits the ability of a federal district court to exercise its subject-matter jurisdiction over an action brought against a state or one of its entities. As such, although Eleventh Amendment immunity is not a "true limit" on this Court's subject matter jurisdiction, the Court concludes that it is more appropriate to consider this argument under Fed. R. Civ. P. 12(b)(1) because it ultimately challenges this Court's ability to exercise its Article III power.

569 F.Supp.2d at 547.

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed 'in one of two ways': either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" *McClain v. Kavic*, Civ. No. DKC-24-1489, 2025 WL 2299410, at *2 (D. Md. Aug. 8, 2025) (citation modified) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Id.* (quoting *Kerns*, 585 F.3d at 192). "In a factual challenge, on the other hand, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.* (quoting *Kerns*, 585 F.3d at 192). "In that circumstance, the court 'may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Id.* (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)). Defendants' contention that Plaintiff's claims are barred by Eleventh Amendment immunity raises a facial challenge. Thus, the Court assumes the truth of Plaintiff's allegations.

"The Eleventh Amendment provides, in relevant part, that '[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State.'" *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 100 (4th Cir. 2019) (quoting U.S. CONST. amend. XI). "By 'draw[ing] upon principles of sovereign immunity,' the Supreme Court has 'construe[d] the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'" *Id.* (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)). "The Court has also recognized that the States'

Eleventh Amendment immunity may extend to 'state agents and state instrumentalities.'" *Id.* (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)); *see also Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 3d 392, 410 (D. Md. 2022) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984)) ("[S]overeign immunity bars suit not only against a state, but also against an instrumentality of a state, such as a state agency, sometimes referred to as an 'arm of the state.'").

As Defendants note, "[t]he University of Maryland is . . . 'an arm of the State partaking of the State's Eleventh Amendment immunity.'" *Palotai v. Univ. of Md. Coll. Park*, 959 F. Supp. 714, 716 (D. Md. 1997) (quoting *Bickley v. Univ. of Md.*, 527 F. Supp. 174, 181 (D. Md. 1981)). "Claims against state employees sued in their official capacities are also subject to Eleventh Amendment immunity." *Garza-Ovalle v. Armstrong*, Civ. No. ELH-19-895, 2020 WL 230896, at *9 (D. Md. Jan. 15, 2020)); *see also Fleming v. Va. State Univ.*, No. 3:15CV268, 2016 WL 927186, at *3 (E.D. Va. Mar. 4, 2016), *aff'd as modified*, 671 F. App'x 117 (4th Cir. 2016) (holding that Eleventh Amendment immunity extends to professors employed at a public university that are sued in their official capacities). "This is because such a suit is tantamount to a suit against the state itself." *Garza-Ovalle*, 2020 WL 230896, at *9 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)). Thus, Defendants are generally immune from being sued in their official capacities by other individuals in federal court.

There are, however, three potential exceptions to Defendants' Eleventh Amendment immunity. "First, 'Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority.'" *Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012) (quoting *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). "Second, 'the Eleventh

Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law.'" *Id.* (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)). "Third, '[a] State remains free to waive its Eleventh Amendment immunity from suit in a federal court.'" *Id.* (quoting *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002)).

The Court agrees with Defendants that none of these exceptions are applicable to the instant action. First, it is well-settled that Congress did not abrogate states' Eleventh Amendment immunity for § 1983 claims. *See Pennhurst*, 465 U.S. at 120 (citation omitted) ("[I]f a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim."); *In re Sec'y of Dep't of Crime Control & Pub. Safety*, 7 F.3d 1140, 1149 (4th Cir. 1993) (citations omitted) ("While Congress may abrogate a State's Eleventh Amendment immunity by express statutory language, . . . it has long been settled that 42 U.S.C. § 1983, which is the ultimate basis for [plaintiff's] claim here, does not effect such an abrogation.").

Second, while Plaintiff does seek injunctive relief against state officials allegedly acting in violation of federal law, this exception only applies where there is a "continuing violation of federal law." *Hayat v. Fairely*, Civ. No. WMN-08-3029, 2009 WL 2426011, at *8 (D. Md. Aug. 5, 2009) (citing *Ex parte Young*, 209 U.S. 123, 167 (1908)); *see also Talley v. Folwell*, 133 F.4th 289, 298 (4th Cir. 2025), *cert. denied*, 146 S. Ct. 609 (2025) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)) ("To successfully bring a claim against a state official in their official capacity for a violation of the Constitution, plaintiffs must 'allege an ongoing violation of federal law and seek relief properly characterized as prospective.'"). To demonstrate a "continuing" violation for purposes of this exception, a plaintiff must show that "the officials being sued [were] 'in violation of federal law at the precise moment when the case was filed.'"

13

*Talley*, 133 F.4th at 298 (quoting *Republic of Paraguay v. Allen*, 134 F.3d 622, 628 (4th Cir. 1998)). Plaintiff initiated this action on January 11, 2024. *See* ECF No. 1.

While the Second Amended Complaint alleges that the disciplinary proceeding against Plaintiff had only been "halted" seven days later, SAC ¶ 3, Defendants' allegedly unconstitutional conduct was not "ongoing" at the time this case was filed. During the hearing on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 3, Plaintiff shared that they were no longer enrolled at UMSOP. When asked by the Court when their enrollment ended, Plaintiff responded that they last attended classes on or about December 15, 2023. When asked by the Court whether they had any plans to reenroll, Plaintiff expressed that they did not think the cost of tuition was worth the alleged infringements on their First Amendment rights. Based on these comments, the Court finds that any allegedly unconstitutional conduct by Defendants was no longer "ongoing" on or around mid-December 2023, when Plaintiff effectively stopped attending UMSOP without a planned return.[5] As Plaintiff's departure from UMSOP occurred several weeks before they filed this suit, the *Ex parte Young* exception to Eleventh Amendment immunity does not apply here.

Finally, although "[a] state, or its instrumentality, may waive its Eleventh Amendment sovereign immunity and be sued in federal court[,]" *MedSense, LLC v. Univ. Sys. of Md.*, 420 F. Supp. 3d 382, 393 (D. Md. 2019) (citations omitted), no such waiver occurred here. "[T]he 'test for determining whether a [s]tate has waived its immunity from federal-court jurisdiction is a

---

[5] Plaintiff also alleges that, as the University's disciplinary case against them "still has not been closed," "Defendants continue to maintain this ambiguity as leverage against Plaintiff's expression of protected speech." SAC ¶ 3. The Court does not find this allegation sufficient to demonstrate a "continuing violation of federal law." *Hayat*, 2009 WL 2426011, at *8. While it may bring Plaintiff dissatisfaction that the disciplinary hearing has only been "halted" and not terminated, so long as Plaintiff is not a student at the University, the Court cannot find that there is an "ongoing" violation of their constitutional rights by Defendants.

stringent one.'" *Id.* (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)). "[A] state [may] waive[] its Eleventh Amendment immunity in one of two ways[.]" *Id.* First, "a state [can] make[] a '"clear distinction" that it intends to submit itself to [federal] jurisdiction'[.]" *Id.* (third alteration in *MedSense*) (quoting *College Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675–76 (1999)). Only "a state's highest court is entitled to say what that state's law is on the question of consent to suit in federal court." *Lee-Thomas*, 666 F.3d at 252 (citing *Palmer v. Ohio*, 248 U.S. 32, 34 (1918)). "Maryland's highest court . . . has instructed that 'any waiver of [the State's] immunity must come from the [l]egislature.'" *MedSense*, 420 F. Supp. 3d at 393 (quoting *State v. Sharafeldin*, 854 A.2d 1208, 1214 (Md. 2004)). However, "no enactment of the General Assembly can 'create a cause of action under § 1983 against an entity whom Congress has not subjected to liability.'" *Md. Bd. of Physicians v. Geier*, 211 A.3d 543, 575 (Md. Ct. Spec. App. 2019) (quoting *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 376 (1990)). Seeing as "neither a State nor its officials acting in their official capacities are 'persons' under § 1983[,]" and thus Defendants could not be subjected to liability in their official capacities under § 1983 by Congress, the General Assembly would not be able to waive Defendants' immunity from Plaintiff's § 1983 claims. *Will*, 491 U.S. at 71.

A second way a state may waive its Eleventh Amendment immunity is by "voluntarily invok[ing] federal jurisdiction." *MedSense*, 420 F. Supp. 3d at 393. Because Defendants did not engage in any affirmative conduct to cause this action to be filed in federal court, the Court does not find that Defendants voluntarily waived their immunity. *Compare id.* at 395 ("Here, [p]laintiff has brought a claim against [defendants] in federal court. It cannot argue that either [defendant] acted as an affirmative participant that voluntarily invoked federal jurisdiction."), *with Lapides*, 535 U.S. at 622 ("[T]he State's action joining the removing of this case to federal court waived its

15

Eleventh Amendment immunity[.]"). The Court also notes that, "[a]bsent a valid waiver," Plaintiff's claims for compensatory and punitive damages against Defendants are barred by the Eleventh Amendment. *Abrams v. Jackson*, No. 5:20-CT-3231-M, 2025 WL 981855, at *8 (E.D.N.C. Apr. 1, 2025) (citing *Eldelman v. Jordan*, 415 U.S. 651, 662–63 (1974)).

In view of the foregoing, the Court finds that Individual Defendants, in their official capacities, are immune under the Eleventh Amendment from Plaintiff's § 1983 claims in this case, and, therefore, this Court lacks subject matter jurisdiction over them. Any official-capacity claims against Individual Defendants must be dismissed.

### C. Qualified Immunity

Although the Court has determined that it lacks subject matter jurisdiction over Plaintiff's claims against Individual Defendants to the extent they are sued in their official capacities, it is unclear from the face of the Second Amended Complaint whether Plaintiff intended to sue them in that capacity or in their individual capacities.[6] As such, the Court will also consider whether the doctrine of qualified immunity bars Plaintiff's claims against them. Defendants argue that it does. ECF No. 35-1 at 10–13. For the reasons that follow, the Court agrees.

"Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Davison v. Rose*, 19 F.4th 626, 640 (4th Cir. 2021) (citation omitted). Professors at public universities are government officials for qualified immunity purposes and thus may assert a

---

[6] The Second Amended Complaint provides in its jurisdiction and venue section that the pleading pertains to "deprivation[s] of First Amendment rights under the color of state authority." SAC ¶ 5. While "[p]ersonal capacity suits seek to impose personal liability upon . . . government official[s] for actions [they] take[] under color of state law," *Johnson v. Silvers*, 813 F.2d 401 (4th Cir. 1986), the "color of state authority" language in the Second Amended Complaint does not clearly indicate that Plaintiff intends to sue Individual Defendants in their individual capacities.

qualified immunity defense. *See Babinski v. Sosnowsky*, 79 F.4th 515, 524 (5th Cir. 2023) (holding that public university professors were entitled to qualified immunity). The Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citation omitted). "If a violation of a constitutional right in fact exists, qualified immunity nonetheless shields a [public] official from liability, *unless* the violation was of a 'clearly established right of which a reasonable person would have known.'" *Benjamin v. Lewis*, No. 9:19-CV-1467-SAL-MHC, 2020 WL 8083690, at *9 (D.S.C. Nov. 6, 2020), *report and recommendation adopted*, 2021 WL 62501 (D.S.C. Jan. 7, 2021) (emphasis added) (quoting *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Plaintiff alleges that Defendants violated their right to free speech and, in seeking to discipline them, retaliated against their exercise of their First Amendment rights. SAC ¶¶ 2, 5, 94, 99, 103, 107, 111, 115, 119, 123, 127, 135. "The First Amendment, as incorporated by the Fourteenth, prevents the states from 'abridging the freedom of speech.'" *Katti v. Arden*, 161 F.4th 217, 228 (4th Cir. 2025) (quoting U.S. CONST. amend. I). In addition to pure speech, the First Amendment also prohibits states from stifling some forms of expressive conduct. *See Virginia v. Black*, 538 U.S. 343, 358 (2003). "Th[ese] proscription[s] safeguard[] not just 'the affirmative

right to speak, but also the "right to be free from retaliation"' on the basis of protected speech." *Id.* (quoting *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011)).

"[S]tate colleges and universities are not enclaves immune from the sweep of the First Amendment." *Healy v. James*, 408 U.S. 169, 180 (1972). However, the Supreme Court "has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in [state-operated] schools." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 507 (1969); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 444 (4th Cir. 2013) ("Although students' expression of their views and opinions is an important part of the educational process and receives some First Amendment protection, the right of students to speak in school is limited by the need for school officials to ensure order, protect the rights of other students, and promote the school's educational mission."). "[T]he fundamental right to speak secured by the First Amendment does not leave people at liberty to publicize their views 'whenever and however and wherever they please.'" *Wood v. Moss*, 572 U.S. 744, 757 (2014) (citation modified). "Colleges have authority to impose reasonable time, place, and manner restrictions on student speech, and if [a student] violate[s] a neutral regulation on classroom disruption, [school officials] could certainly discipline [them] without violating [their] First Amendment rights." *Deegan v. Moore*, No. 7:16-CV-00260, 2017 WL 1194718, at *6 (W.D. Va. Mar. 30, 2017) (citations omitted); *see also Thompson v. Ragland*, 23 F.4th 1252, 1257 (10th Cir. 2022) (quoting *Healy*, 408 U.S. at 192–93) ("[A]lthough students in higher education enjoy the protection of the First Amendment, a university 'may expect that its students adhere to generally accepted standards of conduct' that govern 'the time, the place, and the manner' of student speech."); *Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 258 (4th Cir. 2003) ("Speech that disrupts

education, causes disorder, or inappropriately interferes with other students' rights may be proscribed or regulated."). "In the public school setting, the First Amendment protects the *non*disruptive expression of ideas. It does not erect a shield that handicaps the proper functioning of the public schools." *Newsom*, 354 F.3d at 258 (emphasis added).

Accepting the facts alleged in the Second Amended Complaint as true, Individual Defendants did not run afoul of any clearly established constitutional rights by seeking to address Plaintiff's conduct through the University's formal disciplinary process. The facts reflected in the pleading and the documents attached and incorporated into it show that Plaintiff disrupted the learning environment at UMSOP. Plaintiff "cause[d] disorder" when they: (1) asked a professor in front of the entire class an off-topic question related to their career endeavors; (2) blew their nose in a manner that disturbed several students, prompting the professor to pause his lecture and ask whether Plaintiff needed to be excused; (3) spoke condescendingly to their professors during a meeting related to an assignment; (4) attended a question-and-answer session for a UMSOP professorship candidate, during which they asked "oddly specific scientific questions," offered unduly verbose commentary on the school and surrounding city, and unnecessarily raised the candidate's merit for the position; (5) attended a deaf awareness event at UMSOP, where, before the event, they used incorrect hand gestures to communicate with the guest speaker and, during the event, asked an off-topic question that confused the speaker and interpreters and upset student audience members; and (6) repeatedly brought up information beyond the scope of a class and, during the same lecture, called out professors for rounding numeric results when doing so was irrelevant. *Newsom*, 354 F.3d at 258. These events occurred in quick succession during the first six weeks of the semester. Individual Defendants took issue with the time, place, and manner of Plaintiff's speech in each of these incidents and initiated a disciplinary proceeding to determine

whether Plaintiff's conduct violated a viewpoint-neutral student honor code provision regulating disruptive behavior. *See* ECF No. 1-13 at 4.

Though Plaintiff asserts that none of their alleged disruptions were "substantial [or] material," the Ninth Circuit has persuasively held that, "because of the state's interest in education," in cases where a student has been found to violate a school regulation prohibiting disruptive behavior, "the level of disturbance required to justify official intervention is relatively lower . . . than it might be" outside of the public-school context. *Karp v. Becken*, 477 F.2d 171, 175 (9th Cir. 1973).

Having failed to respond to Defendants' motion, Plaintiff fails to demonstrate that any First Amendment right Individual Defendants infringed was clearly established when they took action. To determine whether an official is alleged to have violated "clearly established" law, courts in the Fourth Circuit "first look to cases from the Supreme Court, [the Fourth Circuit] Court of Appeals, or the highest court of the state in which the action arose." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 98 (4th Cir. 2017). Plaintiff has not identified, nor is this Court aware of, any case law binding in this Circuit that clearly established any right they had as a UMSOP student to express themself in the disruptive manner reflected in their pleading.

Accordingly, the Court finds that Individual Defendants did not infringe upon Plaintiff's clearly established First Amendment rights when they initiated disciplinary proceedings against them based on numerous documented instances of disruptive behavior. *See Carolina Youth Action Project; D.S. by & through Ford v. Wilson*, 60 F.4th 770, 792 (4th Cir. 2023) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 110–11 (1972)) ("As the Supreme Court has recognized, conduct that disturbs the learning environment is a proper target of regulation."). Therefore, Individual

Defendants are entitled to qualified immunity from Plaintiff's claims for monetary relief, and any individual-capacity claims asserted against them for damages are dismissed.

### D. Claims for Injunctive and Declaratory Relief

In addition to monetary damages, Plaintiff requests that the Court "preliminarily and permanently enjoin Defendant[s] from bringing any disciplinary action against Plaintiff based on the . . . allegations" in the grievance. SAC ¶ 138; ECF No. 1-2. Plaintiff also seeks "declaratory relief recognizing that Section 3.1 of the [University's] Student Honor Code, as well as [UMSOP's] Technical Standards, are vague and overbroad in violation of the First Amendment." SAC ¶ 140. Because qualified immunity does not apply to requests for injunctive or declaratory relief, the Court shall separately address Plaintiff's claims to these forms of relief. *See Thorpe v. Clarke*, 37 F.4th 926, 937 n.4 (4th Cir. 2022) (citing *Pearson*, 555 U.S. at 242).

First, Plaintiff's claim for injunctive relief is moot. As the Court discussed *supra*, Plaintiff is no longer a UMSOP student and is thus no longer subject to any disciplinary action by Defendants. Moreover, Defendants voluntarily halted the disciplinary action, and Plaintiff has not expressed a clear intent to reenroll at UMSOP such that there is any likelihood they would be subjected to it again. *See Kim v. Rector of Univ. of Va.*, No. 3:25-CV-00054, 2025 WL 3046192, at *6 (W.D. Va. Oct. 31, 2025) (citing *Am. Humanist Ass'n v. Greenville Cnty. Sch. Dist.*, 652 F. App'x 224, 228–31 (4th Cir. 2016)) ("[T]o the extent that [plaintiff] is no longer enrolled at UVA and does not intend to be enrolled in the future, her claims for injunctive relief . . . are likely moot."); *Dobrich v. Walls*, 380 F. Supp. 2d 366, 373 n.2 (D. Del. 2005) (finding that plaintiffs' claim for injunctive relief against school defendants was moot as to former student who had not alleged he would ever return to school in district).

Second, the Supreme Court has held that declaratory relief is "improper where [a] lack of continuing violation [has] rendered injunctive relief moot and damages [are] unavailable." *Wood v. Bd. of Educ. of Charles Cnty.*, Civ. No. GJH-16-00239, 2016 WL 8669913, at *4 (D. Md. Sept. 30, 2016) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985)). Seeing as Plaintiff's request for injunctive relief is moot, and the qualified immunity doctrine "shields [Individual Defendants] from money damages," it would be improper for the Court to grant Plaintiff declaratory relief. *Sowers v. City of Charlotte*, 659 F. App'x 738, 741 (4th Cir. 2016).

For the foregoing reasons, claims for injunctive and declaratory relief asserted in the Second Amended Complaint must be dismissed.

## IV.    PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff filed a motion for sanctions against Defendants under Federal Rule of Civil Procedure 11(b)(3). "Rule 11(b)(3) provides that an attorney presenting a document to the district court is thereby certifying that 'the factual contentions [therein] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation.'" *Columbia Gas Transmission, LLC v. Haas*, Civ. No. 22-1504, 2023 WL 4787441, at *4 (4th Cir. July 27, 2023) (quoting Fed. R. Civ. P. 11(b)(3)). Rule 11(c)(1) provides that "the court may impose an appropriate sanction on any attorney, law firm, or party" for violating Rule 11(b) "after notice and a reasonable opportunity to respond[.]" "Sanctions are only warranted if an allegation has no factual basis." *Id.*; *see also Chaplin v. Du Pont Advance Fiber Sys.*, 124 F. App'x 771, 774 (4th Cir. 2005) (citing *In re Kunstler*, 914 F.2d 505, 516 (4th Cir. 1990)) ("When there is no factual basis for a particular claim, the attorney has violated Rule 11(b)(3)."). "This is an objective standard[.]" *Morgan v. City of Rockville*, Civ. No. GJH-13-1394, 2014 WL 3723882, at *2 (D. Md. July 24, 2014). Importantly, "[v]ague allegations of bad faith do

22

not justify the imposition of sanctions [under Rule 11]," *Southmark Inv. Grp. 86, Inc. v. Turner Dev. Corp.*, 140 F.R.D. 1, 3 (M.D. Fla. 1991), and "mere disagreement[s] about the facts [are] not on [their] own grounds for sanctions under Rule 11," *Sansone v. Kormex Metal Craft, Inc.*, No. 14 C 8418, 2016 WL 1529900, at *7 (N.D. Ill. Apr. 14, 2016).

While "[t]he decision to issue Rule 11 sanctions is [ultimately] within the court's discretion," "sanctions should be imposed 'sparingly.'" *Scott v. Lori*, Civ. No. ELH-19-2014, 2020 WL 906351, at *2 (D. Md. Feb. 24, 2020) (first citing *DeBauche v. Trani*, 191 F.3d 499, 512 (4th Cir. 1999), then quoting *Jacobs v. Venali, Inc.*, 596 F. Supp. 2d 906, 914 n.10 (D. Md. 2009)). "Rule 11 motions should not be prepared or threatened for insignificant violations of the rule [and a] claim of violation of Rule 11 is a serious charge [that] can itself form the basis of a Rule 11 sanction." *Brooks v. Asheville Detox, LLC*, No. 1:25-CV-58-MOC-WCM, 2025 WL 2427199, at *3 (W.D.N.C. July 28, 2025) (citation omitted).

Plaintiff argues that Defendants should be sanctioned under Rule 11 for making factual assertions without evidentiary support in three filings: Defendants' first motion to dismiss (ECF No. 18-1 at 2–3), Defendants' response in opposition to Plaintiff's motion to amend (ECF No. 27 at 2–3), and Defendants' second motion to dismiss (ECF No. 35-1 at 2–3). ECF No. 47 at 1. Specifically, Plaintiff takes issue with Defendants' assertions: (1) that Plaintiff made gestures towards a guest speaker during a lecture; (2) that students complained about Plaintiff blowing their nose in class; (3) that Plaintiff blew their nose "loudly" in class; and (4) that Plaintiff asked a question "which intimated that the School of Pharmacy was only considering [a professorship] candidate because of his race and affirmative action." ECF No. 47 at 2–3. Plaintiff argues that Defendants' filings purport to accept the facts alleged in the Second Amended Complaint yet contradict them. *Id.* at 3. Because "Defendants have crafted these aberrations to paint Plaintiff in

23

a worse light than the Complaint . . . and have refused to fix or even explain their mistakes," Plaintiff argues, "the Court should strike the offending sections from Defendants' filings . . . or instruct Defendants to amend their filings so as to omit them." *Id.* at 3–4.

The Court does not find it appropriate to impose sanctions on Defendants for the claimed Rule 11 violations. The minor inconsistencies between Defendants' phrasing in their motion papers and the facts reflected in the grievance and its attachments do not support a finding that the challenged assertions lacked a factual basis under an objective standard. Plaintiff takes issue with the first assertion based solely on the fact that the grievance indicates that Plaintiff made an incorrect hand gesture towards the guest speaker before the event began, not during the event, and does not describe the speaker's remarks as a "lecture." These inconsequential discrepancies do not undermine Defendants' core assertion—that Plaintiff's conduct at the time of the event was disruptive. Next, Plaintiff takes issue with the second and third assertions because the grievance indicates that Plaintiff's nose blowing "disturbed" their peers, rather than prompting student complaints, and that it created "noise" but was not described as "loud." Again, these discrepancies are trivial, as Defendants' core assertion—that Plaintiff's nose blowing disrupted class—remains intact and is supported by the record. The fourth challenged assertion is that Plaintiff made a comment suggesting a professorship candidate was being considered due to his race and affirmative action, rather than solely due to affirmative action, as the grievance states. Defendants' reference to race is not wholly supported by the record, but the Court is not persuaded that this discrepancy constitutes a serious enough violation to warrant sanctions under Rule 11. For the foregoing reasons, Plaintiff's motion for Rule 11 sanctions is denied.

## V.    ORDER

For the foregoing reasons, it is by the United States District Court for the District of Maryland hereby ORDERED that Defendants' Motion to Dismiss (ECF No. 35) is GRANTED, and Plaintiff's Motion for Sanctions (ECF No. 47) is DENIED. And it is further ORDERED that Plaintiff's Second Amended Complaint is dismissed without prejudice.

The Clerk SHALL CLOSE this case and SHALL SEND a copy of this Memorandum Opinion and Order to Plaintiff and counsel of record.


___3/30/26___
Date

_____
Matthew J. Maddox
United States District Judge